**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL E. VINTZILEOS and STEVEN WRONKO, <br><br> Plaintiffs, <br><br> v. <br><br> BOROUGH OF LAVALLETTE, *et al.*, <br><br> Defendants. | Civil Action No. 25-2200 (GC) (RLS) <br><br> **OPINION** |

**CASTNER, District Judge**

 **THIS MATTER** comes before the Court upon a Motion to Dismiss brought by Defendants Borough of Lavallette, Walter LaCicero, John Bennett, Donnelly Amico, Christian LaCicero, Adam LaCicero, and Justin D. Lamb pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6). (ECF No. 6.)  Plaintiffs Michael E. Vintzileos and Steven Wronko opposed, and Defendants replied.  (ECF Nos. 12, 13.)  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

I.    **BACKGROUND**

A.    **Factual Background**

Plaintiffs' allegations stem from their arrest on June 24, 2023, at a Borough of Lavallette Town Council meeting.[1]  (ECF No. 1 at 4-5.[2])  Plaintiffs allege they attended the meeting because the Town Council planned to address "ADA beach access," a topic of interest to them.  (*Id.* at 4.) In advance of the meeting, Plaintiffs allege they "provided notice" to Lavallette of their intent to record the meeting.  (*Id.*)  Municipal Clerk, Defendant Donnelly Amico, allegedly responded with the statement: "Have a nice weekend."  (*Id.*)  Plaintiffs allege this "written proof" constituted permission to record the meeting.  (*Id.* at 4-5.)

Plaintiffs arrived at the meeting separately.  (*Id.*)  Plaintiff Steven Wronko arrived first and took a seat.  (*Id.*)  Plaintiffs allege that although Wronko "never interfered with any meeting and never disrupted the business of the governing body or any other citizens' right of access to the proceeding" and "the meeting had not started or had been called to order," Defendants Sergeant Adam LaCicero, Sergeant Justin D. Lamb, and other unnamed LPD officers (collectively, Officer Defendants) arrested Wronko "without probable cause."  (*Id.* at 4.)  Prior to his arrest, Plaintiffs allege Wronko "advised" the Officer Defendants of his "common law right to record proceedings" and offered to show them a printed copy of *Tarus v. Borough of Pine Hill*, 916 A.2d 1036 (N.J. 2007).  (*Id.* at 4-5.)

---

[1]    Plaintiffs bring claims against the Borough of Lavallette and six individually named Defendants, including Mayor Walter LaCicero, Lavallette Police Department (LPD) Chief of Police Christian LaCicero, LPD Sergeant Adam LaCicero, LPD Sergeant Justin D. Lamb, Administrator John Bennett, and Municipal Clerk Donnelly Amico.  (ECF No. 1 at 2-3.)  Plaintiffs allege that Mayor LaCicero is the father of Chief LaCicero and Sergeant LaCicero.  (*Id.*)

[2]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

Plaintiffs also allege that Wronko "offered to show" the Officer Defendants "written proof from Clerk Amico that he had permission to record the proceedings." (*Id.* at 5.) The Officer Defendants refused to review the documentation. (*Id.*)

Plaintiff Michael Vintzileos arrived at the meeting after Wronko but prior to the start of the meeting. (*Id.* at 4-5.) Plaintiffs allege that, after taking a seat prior to the start of the meeting, "[w]ithin seconds," the Officer Defendants arrested Vintzileos "without probable cause." (*Id.* at 5.) Plaintiffs allege that, like Wronko, Vintzileos "never interfered with any meeting and never disrupted the business of the governing body or any other citizens' right of access to the proceeding" and "the meeting had not started or had been called to order when they arrested him." (*Id.*)

Plaintiffs further allege that Defendants Mayor Walter LaCicero, Administrator John Bennett, Clerk Amico, and Chief of Police Christian LaCicero "were present in the meeting hall and either ordered the arrests" or "acquiesced in their unlawful arrests." (*Id.*) The alleged false arrests and malicious prosecutions were allegedly "in retaliation for Plaintiffs exercising their common law right to record the Town Hall proceedings." (*Id.* at 11.)

Plaintiffs aver that body camera footage from the arrests shows that "neither of the Plaintiffs interfered in any way with any meeting and never disrupted the business of the governing body or any other citizens' right of access to the proceeding."[3] (*Id.* at 5-6.)

After they were arrested, Plaintiffs allege they were brought to police headquarters, located in the same building as where the Council meeting was being held. (*Id.* at 6.) Sergeant LaCicero allegedly called his brother, Chief LaCicero, and asked "how to write up" the criminal complaints against Plaintiffs. (*Id.*) Plaintiffs were ultimately charged with Purposely Preventing or Disrupting

---

[3]    A copy of the body camera footage was provided to the Court.

Through an Act of Physical Interference a Lawful Meeting, in violation of N.J. Stat. Ann. § 2C:33-8, by "filming the meeting and disrupting the governing body at the start of the counsel [sic] meeting without receiving prior written permission to do so." (*Id.* at 4-5.) On March 21, 2024, a municipal court judge dismissed the charges against Plaintiffs. (*Id.* at 6.)

### B. Procedural Background

Plaintiffs filed their Complaint on April 1, 2025. (ECF No. 1.) They allege violations of their constitutional rights pursuant to 42 U.S.C. § 1983, including claims for false arrest, malicious prosecution, conspiracy to violate civil rights, First Amendment retaliation, and municipal liability as established in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). They also allege a violation of the New Jersey Civil Rights Act (NJCRA) and bring claims under New Jersey common law for false arrest and malicious prosecution. Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343, and 1367.

## II.    LEGAL STANDARD

### A. Rule 12(b)(6) – Failure to State a Claim

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere

conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### B.    Rule 8 – Pleading Requirements

Rule 8(a) does not require a complaint to contain detailed factual allegations. Still, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("Rule 8 'requires a "showing," rather than a blanket assertion, of entitlement to relief.'") (citations omitted). Thus, the Complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see, e.g., W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013) (affirming dismissal where plaintiff did not plead facts to support the bare assertion that confidential information was disclosed in violation of the duty of good faith and fair dealing). The facial plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Though "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III.    <u>DISCUSSION</u>

#### A.    Scope of the Record

Plaintiffs provided multiple exhibits to the Court in their opposition to Defendants' Motion, including: (1) body camera footage of both Plaintiffs' arrest; (2) footage from the Mantoloking municipal court hearing; and (3) a transcript of the municipal court hearing. (ECF Nos. 12-2, 12-3.) In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer*, 605 F.3d at 230. A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory*, 114 F.3d at 1426.

The Court will consider these materials in deciding the Motion to Dismiss. There does not appear to be any dispute that the exhibits are either matters of public record or integral to or explicitly relied upon in the Complaint and otherwise authentic. (*See* ECF No. 1 at 5-6.) *See also Pittman v. Metuchen Police Dept.*, Civ. No. 12-2044, 2013 WL 1089524, at *5 (D.N.J. Mar. 14, 2013) (considering exhibits attached to plaintiff's brief in opposition to the motion to dismiss); *Wade v. Colaner*, Civ. No. 06-3715, 2009 WL 1738490, at *2 n.1 (D.N.J. June 17, 2009) (considering video of incident and state court proceeding transcripts to decide motion to dismiss); *James v. Brant*, Civ. No. 22-106, 2024 WL 23380, at * 6 (W.D. Pa. Jan. 2, 2024) (considering surveillance video because no party disputed its authenticity and because it was "integral to [and] explicitly relied upon" in the complaint); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping*

*Group Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").  Moreover, Defendants did not object to the introduction of these materials in their reply brief.  (*See* ECF No. 13.)

### B.    Section 1983 Claims

To state a claim under § 1983, a plaintiff must plead (1) "that the conduct complained of was committed by a person acting under color of state law;" and (2) "that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).  Section 1983 does not create any rights; it only "provides private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (citing 42 U.S.C. § 1983); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906-07 (3d Cir. 1997) ("By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law.") (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Here, Plaintiffs allege five claims under § 1983 for false arrest, malicious prosecution, conspiracy to violate civil rights, First Amendment retaliation, and *Monell* liability.  Plaintiffs assert certain of these claims against the Borough of Lavallette as well as individually named Defendants in both their official and personal capacities, seeking only monetary damages.  As municipal officials, the individual Defendants fall within the definition of "persons" subject to suit under § 1983.  *See Figueroa v. City of Camden*, 580 F. Supp. 2d 390, 403-04 (D.N.J. 2008).  However, "[a] claim asserted against a municipal government official in his or her official capacity is treated as a suit against the municipal entity itself." *Scanlon v. Lawson*, Civ. No. 20-3212, 2022

WL 1940420, at *3 (3d Cir. May 17, 2022). And "where claims against an officer in his official capacity are duplicative of claims against the municipality, those claims are properly dismissed as redundant." *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 131 (D.N.J. 2017) (collecting cases). Indeed, "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Natsis v. Turner*, Civ. No. 13-7269, 2017 WL 945081, at *8 (D.N.J. Mar. 10, 2017) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) (citation modified). Accordingly, to the extent Plaintiffs' claims are asserted against the individual Defendants in their official capacities, those claims are dismissed as redundant to Plaintiffs' *Monell* claim against the Borough of Lavallette.

As to Plaintiffs' remaining personal capacity and *Monell* claims, Defendants assert that these claims should be dismissed based on qualified immunity and failure to state a claim. The Court reviews each claim in turn.

### 1. Count One: False Arrest

To state a false arrest claim under § 1983, Plaintiffs must plead: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012).[4] "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). Moreover, "an arrest is

---

[4]      Plaintiff brings this claim under the Fourth Amendment and the Fourteenth Amendment. However, Plaintiffs cannot seek "recovery under the Fourteenth Amendment for conduct that would fall within the scope of other amendments, such as the First Amendment and Fourth Amendment." *See Schwester v. Borough of Far Hills*, Civ. No. 25-00007, 2025 WL 1911581, at *11 (D.N.J. July 11, 2025) (collecting cases). Therefore, the Court construes this claim under the Fourth Amendment.

lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *Saintil v. Borough of Carteret*, No. 22-2898, 2024 WL 3565308, at *6 (3d Cir. July 29, 2024) (citing *District of Columbia v. Wesby*, 583 U.S. 48, 54 n.2 (2018)). However, "judgment as a matter of law in favor [of] a defendant on Fourth Amendment claims typically is only appropriate when the undisputed and well-pleaded facts clearly show that probable cause existed." *Tucker v. Petruzzi*, Civ. No. 17-1848, 2018 WL 3623766, at *5 (M.D. Pa. June 27, 2018) (citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995)). Courts consider "the elements of the offense to determine whether an arrest was supported by probable cause." *Karns v. Shanahan*, 879 F.3d 504, 523 (3d Cir. 2018).

Defendants argue that Plaintiffs "refused to cease videotaping after being instructed to do so by the officers" and that this refusal "in the context of a public meeting with established procedures" constituted a disruption that violated the law.[5] (ECF No. 6-1 at 11.) Under New Jersey's disruption of meetings statute, "[a] person commits a disorderly persons offense if, with purpose to prevent or disrupt a lawful meeting, procession or gathering, he does an act tending to obstruct or interfere with it physically." N.J. Stat. Ann. § 2C:33-8 (2024). Plaintiffs allege that they "never interfered with any meeting and never disrupted the business of the governing body

---

[5]    In Defendants' reply, they argue for the first time that the arresting officers also had probable cause to arrest Plaintiffs for violating New Jersey's law against defiant trespass. (ECF No. 13 at 6-7.) The relevant statute reads, "A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by . . . [a]ctual communication to the actor." N.J. Stat. Ann. § 2C:18–3(b). However, because this argument is raised for the first time on reply, it is "not properly before the Court and need not be considered," and therefore the Court will not consider it. *Morey v. Rodriguez*, Civ. No. 17-56, 2018 WL 2427122, at *2 (D.N.J. May 29, 2018); *Liquid Labs LLC v. U.S. FDA*, 52 F.4th 533, 539 n.6 (3d Cir. 2022) ("We decline to 'reach arguments raised for the first time in a reply brief.'") (quoting *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146 (3d Cir. 2017)); *Specht v. Suarez*, Civ. No. 21-18592, 2025 WL 2588675, at *11 n.18 (D.N.J. Sept. 5, 2025) (declining to consider argument regarding First Amendment retaliation and collecting cases).

or any other citizens' right of access to the proceeding." (ECF No. 1 at 4-5.) They also allege that the meeting had not started nor had been called to order when Sergeants LaCicero and Lamb arrested Plaintiffs. (*Id.*) Therefore, Plaintiffs allege that the Officer Defendants lacked probable cause to arrest Plaintiffs.

Based on Plaintiffs' allegations, which the Court must accept as true, and with all inferences drawn in favor of Plaintiff, the Court finds that Plaintiffs have plausibly pled that the Officer Defendants lacked probable cause to arrest to survive a motion to dismiss. According to Plaintiffs, Plaintiffs had permission to record the meeting, and the meeting had yet to begin. (ECF No. 1 at 4-5.) The record has not yet been developed as to whether Plaintiffs indeed had permission to record the meeting and what exchanges may have occurred, if any, prior to the arrests. The body camera footage does not affirmatively resolve these factual disputes. As such, this issue is more appropriately considered on a motion for summary judgment, once the factual record has been more thoroughly developed. *See, e.g.*, *Fernandes v. City of Jersey City*, Civ. No. 16-7789, 2017 WL 2799698, at *3, 11 (D.N.J. June 27, 2017) (declining to resolve "the fact-bound issue of probable cause" where plaintiff alleged he was arrested at a public City Council meeting despite "not causing any disturbance"); *Douglass v. Penn Hills Borough*, Civ. No. 07-685, 2007 WL 2907891, at *6 (W.D. Pa. Oct. 2, 2007) (determining that factual disputes related to "the circumstances of [p]laintiff's original arrest" rendered the issue of probable cause "more suited for summary judgment than a motion to dismiss").

Plaintiffs appear to assert their false arrest claim against all individually named Defendants. (ECF No. 1 at 6-7.) Pursuant to Rule 8(a), Plaintiffs must allege that each Defendant had "personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction

or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citation omitted). In *Santiago v. Warminster Township*, the Third Circuit considered whether a district court properly dismissed claims against "senior officers" who allegedly "planned or acquiesced in the use of excessive force" in a raid on the plaintiff's home. 629 F.3d 121, 125 (3d Cir. 2010). The Third Circuit concluded that allegations that these senior officers told other defendants "to do what they did" and otherwise "directed others in the violation" of the plaintiff's rights were of "fundamentally conclusory character," agreeing with the district court that the plaintiff could not state a claim against the senior officers. *Id.* at 131.

Here, Plaintiffs make similar conclusory allegations. While Plaintiffs allege that the Officer Defendants arrested Plaintiffs without probable cause, (ECF No. 1 at 4-5), as to the other individual Defendants, Plaintiffs state only that they "were present in the meeting hall and either ordered the arrests . . . or acquiesced in their unlawful arrests."[6] (*Id.* at 6.) These allegations do not amount to the personal involvement necessary to state a claim. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiffs' false arrest claim under § 1983 as against Defendants Mayor LaCicero, Chief LaCicero, Administrator Bennett, and Clerk Amico. Plaintiffs' claim may proceed against the Officer Defendants in their personal capacities.

---

[6]    While Plaintiffs allege that Chief LaCicero was involved with "how to write up" the criminal complaints, they allege this occurred after the arrests, when they were "brought downstairs to police headquarters to be processed." (*Id.* at 6.) Therefore, Plaintiffs have not sufficiently alleged Chief LaCicero "set the arresting officer in motion." *Young v. City of Newark*, Civ. No. 17-1668, 2017 WL 3498941, at *4 (D.N.J. Aug. 15, 2017); *see also Jones v. Owens*, Civ. No. 17-2634, 2017 WL 4881567, at *3 (D.N.J. Oct. 30, 2017) (finding the plaintiff did not sufficiently allege a false arrest claim against prison wardens because he did not allege they were "responsible for his arrest"); *LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (finding section 1983 claims against the Chief of Police failed where the plaintiff "did not allege facts to demonstrate the Chief of Police's personal involvement with his arrest"); *Donley v. Gloucester City Police Dep't*, Civ. No. 24-6286, 2025 WL 880002, at *2 (D.N.J. Mar. 21, 2025) (dismissing false arrest claims where the plaintiff did not allege "how all officers in the Gloucester City Police Department were personally involved in his alleged false arrest").

### 2.    *Count Two:  Malicious Prosecution*

To sustain a malicious prosecution claim under § 1983, a plaintiff must allege that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (citation omitted).  The Court must dismiss this claim if Plaintiffs fail to sufficiently allege any of these elements.  *See also Earley v. Dougherty*, Civ. No. 22-1855, 2022 WL 2713907, at *2 (D.N.J. July 12, 2022) (dismissing § 1983 malicious prosecution claim after analyzing only one element because the plaintiff failed to plead that the criminal proceeding ended in his favor).

Defendants argue that the Court should dismiss this claim because Plaintiffs do not plausibly allege any of the required elements.  (ECF No. 6-1 at 13-17.)  The Court therefore first considers whether Plaintiffs have sufficiently alleged that they "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."  Defendants argue that Plaintiffs failed to allege that they were "detained post-arraignment, required to post bail, or subjected to any other significant restraint on liberty beyond the initial arrest."  (ECF No. 6-1 at 16.)  Plaintiffs argue that the Complaint "clearly show[s]" that Defendants "arrested Plaintiffs and filed criminal charges against them" and that "the charges were dismissed against them."  (ECF No. 12 at 16.)

For purposes of the Fourth Amendment, "a seizure is a show of authority that restrains the liberty of a citizen." *Gallo v. City of Phila.*, 161 F.3d 217, 223 (3d Cir. 1998).  To state a malicious prosecution claim, the seizure must be "as a consequence of a legal proceeding." *Id.* at 222.  It must occur "only as a subsequent after effect of an arrest and filing of charges" as "[t]he arrest

alone is not enough in this circuit to constitute a seizure." *Basile v. Twp. of Smith*, 752 F. Supp. 2d 643, 660 (W.D. Pa. 2010). Indeed, "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions" can constitute a Fourth Amendment seizure for purposes of a § 1983 malicious prosecution. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005); *see also Gallo*, 161 F.3d at 225 (finding, in what the court called a "close call," that the plaintiff suffered a deprivation of liberty because of "travel restrictions and mandatory court appearances over an eight and a half month period").

Here, however, Plaintiffs allege only that they "suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceeding." (ECF No. 1 at 18.) This allegation alone is conclusory and insufficient. Even if the Court were to infer that Plaintiffs sufficiently allege that they suffered a deprivation of liberty by attending the hearing before the Mantoloking municipal court, this alone is not sufficient to plead a deprivation of liberty because, for example, "[a]ttending one's trial is not a government 'seizure' in a 42 U.S.C. § 1983 malicious prosecution action for violation of the Fourth Amendment." *DiBella*, 407 F.3d at 603. Therefore, Plaintiffs' malicious prosecution claim under § 1983 is dismissed.[7] *See Lloyd v. Ocean Twp. Council*, Civ. No. 2019 WL 4143325 (D.N.J. Aug. 31, 2019) (dismissing § 1983 malicious prosecution claim where the plaintiff asserted the police "arrested her, imprisoned her for over twenty-four hours, and ultimately charged her" because the plaintiff's "arrest alone [was] insufficient to constitute a seizure"); *Basile*, 752 F. Supp. 2d at 660 (dismissing § 1983 malicious prosecution claim where the plaintiff alleged they were arrested, taken to the police station for

---

[7] The Court need not consider the other elements of this claim. *See Allen v. N.J. State Police*, Civ. No. 16-1660, 2019 WL 13260420, at *7 n.4 (D.N.J. Sept. 12, 2019) (dismissing malicious prosecution claim where plaintiff failed to prove one element and declining to discuss the other elements, "since failure to prove any one of these malicious prosecution elements denies [the plaintiff] a cause of action for malicious prosecution").

questioning before being charged, and required to attend a preliminary hearing after the complaint was filed).

### 3.    Count Three:  Conspiracy to Violate Civil Rights

Defendants next argue that Plaintiffs have failed to state a claim of conspiracy under § 1983 because Plaintiffs have failed to allege "any sort of shared intent" or "any concrete agreement" to violate Plaintiffs' rights.  (ECF No. 6-1 at 17.)  Rather, Defendants argue, Plaintiffs allege only "broad and conclusory assertions."  (*Id.*)  Plaintiffs respond by listing allegations that it argues sufficiently state a conspiracy claim.  (ECF No. 12 at 20-21.)  The Court agrees with Defendants and dismisses this claim.

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)).  Accordingly, a plaintiff must allege "concerted action" based on an "agreement" to deprive the plaintiff of his constitutional rights as well as "an actual underlying constitutional violation of the plaintiff's rights."  *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020) (citing *Jutrowski*, 973 F.3d at 295); *Startzell v. City of Phila., PA*, 533 F.3d 183, 205 (3d Cir. 2008) ("[T]here must be a 'meeting of the minds.'") (quoting *Adickes*, 398 U.S. at 158).

Based on Plaintiffs allegations, the Court cannot reasonably infer that there was any such agreement or concerted effort to deprive Plaintiffs of their constitutional rights.  Plaintiffs make a blanket assertion that Defendants "conspired to deprive Plaintiffs of their Fourth Amendment right."  (ECF No. 1 at 9-10.)  In support, Plaintiffs note a family relationship between Mayor LaCicero, Chief LaCicero and Sergeant LaCicero, and they also allege a phone call between Chief LaCicero and Sergeant LaCicero as to "how to write up" the complaints after the arrest.  (ECF No.

14

1 at 6.)  But these allegations alone—the mere existence of a family relationship or calling a superior for direction—are "simply not enough to state a claim for a civil rights conspiracy." *Boucher v. Lupacchini*, Civ. No. 19-2106, 2021 WL 11096471, at *5 (M.D. Pa. Mar. 1, 2021) (dismissing conspiracy claim because plaintiff failed to allege "facts concerning who was involved in this alleged conspiracy and at what time and what place"); *Stevens v. Jones*, Civ. No. 16-8694, 2017 WL 11930571, at *3 (D.N.J. Oct. 3, 2017) (dismissing conspiracy claim because "plaintiff must make additional factual allegations" establishing an agreement and concerted action); *Shiloh v. Does*, Civ. No. 12-1086, 2013 WL 5297511, at *28 (M.D. Pa. Apr. 19, 2013) (dismissing conspiracy claim because plaintiff did not "specify any role or agreement of [d]efendants"), *report and recommendation adopted*, 2013 WL 4761124 (M.D. Pa. May 14, 2013).  Moreover, Plaintiffs make no allegations regarding any participation involving Clerk Amico or Administrator Bennett. Therefore, the Court grants Defendants' Motion as to this claim.

### 4.    *Count Four:  First Amendment Retaliation*

To state a claim for First Amendment retaliation under § 1983, Plaintiffs must plausibly allege: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."  *Zimmerlink v. Zapotsky*, 539 F. App'x 45, 48 (3d Cir. 2013) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)). Plaintiffs allege a "common law right to record."  (ECF No. 1 at 11 ("Defendants abused their authority to harass and retaliate against Plaintiffs for exercising their common law right to record the Town Hall proceedings."); *see also* ECF No. 12 at 19.)  However, not every violation of a common law right necessarily infringes a federal constitutional right.  *See Wilson v. Twp. of Middletown, Susquehanna Cnty., Pa.*, 810 F. Supp. 125, 127-28 (M.D. Pa. 1992) ("Not every violation of a state constitutional, statutory or common law right necessarily infringes federal

constitutional rights.") (citations omitted). Nonetheless, the Court examines the alleged "right to record" in the context of the First Amendment for purposes of this claim. Defendants argue that Plaintiffs' First Amendment retaliation claim should be dismissed because any First Amendment right to record is limited, if it exists at all. (ECF No. 6-1 at 19-20). Defendants also argue that Plaintiffs fail to plausibly allege the required causation or retaliatory intent element of a First Amendment retaliation claim. (*Id.* at 20-21.)

In *Whiteland Woods LP v. Township of West Whiteland*, the Third Circuit considered "whether there is a federal constitutional right to videotape public meetings of a township planning commission when other effective means of recording the proceedings are available." 193 F.3d 177, 180 (3d Cir. 1999). There, a real estate developer sought to record meetings of the Township Planning Commission despite an ordinance banning the use of video recording devices at the meetings. *Id.* at 179. While the ordinance was eventually rescinded, the plaintiffs sued under § 1983 for violations of their constitutional rights incurred during the ban. *Id.* at 180. The district court granted summary judgment for the defendants on these claims, and the plaintiffs appealed. *Id.* The Third Circuit affirmed the decision of the district court, agreeing that while the plaintiff had "a constitutional right of access" to the Commission meetings, it did not have a federal constitutional right to videotape the meetings. *Id.* at 180-81, 184. The Third Circuit's analysis hinged on the alleged constitutional violation of the "right to receive and record information," rather than allegations that the Township "interfered with its speech or other expressive activity." *Id.* at 183. The court reasoned that the ban on recording was a "content-neutral restriction on the time, place, or manner of access to a government proceeding" that did not "meaningfully restrict[]" the plaintiff's right of access to the meeting. *Id.* The plaintiff could still express its views and use other methods to "compile an accurate record of the proceedings," such as taking notes, using

audio recording devices, or a "stenographic recording." The Court finds that the Third Circuit's ruling in *Whiteland Woods* is applicable here and concludes that Plaintiffs have not alleged that they were engaging in constitutionally protected conduct at the time of the arrest to assert a First Amendment retaliation claim. The Court grants Defendants' Motion to Dismiss as to this claim.

### 5.    *Count Five:  Unlawful Policy / Adequate Training* (Monell *Claim*)

Defendants next argue that Plaintiffs' claims against the Borough of Lavallette and against Mayor LaCicero, Administrator Bennett, Clerk Amico and Chief LaCicero in their official and individual capacities should be dismissed because Plaintiffs fail to sufficiently allege a *Monell* claim.[8]  At the outset, the Court notes that *Monell* claims can only be brought against the municipality, and not against individual defendants. *See Moore v. Solanco Sch. Dist.*, Civ. No. 19-2621, 471 F. Supp. 3d 640, 669-70 (E.D. Pa. 2020) (dismissing *Monell* liability claims against individual defendants with prejudice). Therefore, the Court grants Defendants' Motion to Dismiss this claim with prejudice insofar as Plaintiffs assert it against any individual Defendant. As such, the Court considers this claim only as to the Borough of Lavallette.

A municipality "can act only through people—its officers and employees." *Fernandes*, 2017 WL 2799698, at *12. As a result, "liability under [§] 1983 'may not be proven under the respondeat superior doctrine, but must be founded upon evidence that the government unit itself supported a violation of constitutional rights.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)); *see Monell*, 436 U.S. 690-91; *Brinson v. City of Newark*, Civ. No. 20-9606, 2020 WL 6268696, at *4 (D.N.J. Oct. 26, 2020). Municipal liability for constitutional violations can be asserted in two ways: (1) "[a] plaintiff may put forth that an unconstitutional policy or

---

[8]    Although *Monell* is not asserted in Plaintiffs' Complaint, the Court construes Plaintiffs' unlawful policy and/or inadequate training claim as a *Monell* claim.

custom of the municipality led to his or her injuries," or (2) a plaintiff can assert that his or her injuries "were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citations omitted). In this case, Plaintiffs assert both theories. The Court considers each in turn.

First, to sufficiently allege that the Borough enacted an unconstitutional policy, Plaintiffs need to allege a policy that consists of "an official proclamation, policy, or edict" issued by a "decisionmaker possess[ing] final authority to establish municipal policy." *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). The policy need only be a "decision by an official with decision-making authority on the subject," and it "need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of § 1983." *Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020). However, if the conduct "was simply that of an individual employee who was not acting pursuant to a policy . . . that conduct cannot give rise to municipal liability under *Monell*." *Id.* Moreover, the allegations must provide "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231-23 (3d Cir. 2008)) (citation modified). In other words, the allegation must "possess enough heft to show that the pleader is entitled to relief." *Phillips*, 515 F.3d at 231.

Here, Plaintiffs allege that Mayor LaCicero, Administrator Bennett, Clerk Amico and Chief LaCicero "enacted an unconstitutional policy by retaliating against Plaintiffs for exercising their common law right to record the Town Hall proceedings." (ECF No. 1 at 12.) They further allege that these Defendants were policymakers "authorized by state law to make policy" and "whose acts are fairly said to represent official policy and/or custom." (*Id.*; ECF No. 12 at 22.) Defendants argue that Plaintiffs have not alleged facts to demonstrate any specific policy or custom. (ECF

18

No. 6-1 at 23.)  The Court agrees with Defendants, and other courts have held similarly in the context of considering § 1983 claims.  For example, in *McTernan*, the plaintiff sought to assert a municipal liability claim against the City of York, Pennsylvania, alleging that his rights were violated "due to the City's policy of ignoring First Amendment rights."  564 F.3d at 658.  The Third Circuit found that the plaintiff's allegations of a "policy of ignoring First Amendment right[s]" was insufficient to identify and specify the relevant policy to satisfy the pleading standard. *Id.*; *see also Szerensci v. Shimshock*, Civ. No. 20-1296, 2021 WL 4480172, at \*7 (W.D. Pa. Sept. 30, 2021) (finding allegation that the defendant borough "affirmatively adopted an official practice, custom or policy of allowing visitors access to the municipal building without being adequately screened for weapons" with no other facts about the practice, custom, or policy too conclusory to state a claim); *Ekwunife v. City of Phila.*, 245 F. Supp. 3d 660, 674-75 (E.D. Pa. 2017) (finding allegation that a District Attorney "encouraged or condoned a policy, or custom or practice of using known false or fabricated evidence" was a conclusory allegation that "merely parrot[ed] the standard of liability"), *aff'd*, 756 F. App'x 165 (3d Cir. 2018); *LeBlanc*, 483 F. App'x at 669-70 (finding that plaintiff insufficiently stated a claim against the county where he asserted a "policy of accepting criminal charges and prosecuting without verifying the truth to the charges").  Here, too, the Court finds that Plaintiffs have not plausibly alleged an unconstitutional policy.

Second, Plaintiffs allege that the aforementioned Defendants also failed to "train, instruct, supervise, control, and discipline" Sergeant LaCicero, Sergeant Lamb, and Chief LaCicero.[9]  (ECF No. 1 at 13.)  To sufficiently state this claim, Plaintiffs must have alleged "that said failure amounts

---

[9]     The Court notes that Plaintiffs allege Chief LaCicero is a policymaker for purposes of the policy or custom theory, but a trainee for the purposes of the deliberate indifference theory.

to deliberate indifference to the constitutional rights of those affected." *Forrest*, 930 F.3d at 106. Deliberate indifference is a "stringent standard of fault." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014). Plaintiffs can sufficiently plead deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)); *Brinson*, 2020 WL 6268696, at *4 (noting that to "satisfy the *Monell* requirement of actual municipal involvement or culpability, it requires 'deliberate indifference' to constitutional rights and a degree of foreknowledge, generally if not always based on a pattern of past incidents, that a constitutionally perilous situation will occur"). However, "in certain situations, the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights even without a pattern of constitutional violations." *Thomas*, 749 F.3d at 223 (citation modified); *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989) (noting that city policymakers "know to a moral certainty that their police officers will be required to arrest fleeing felons," and therefore "the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights") (citation modified). These special situations are referred to as "single-incident," and depend "on '[t]he likelihood that the situation will recur and the predictability that an [official]

20

lacking specific tools to handle that situation will violate citizens' rights.'" *Id.* at 223-24 (quoting *Brown*, 520 U.S. at 409).

Here, Plaintiffs have not sufficiently alleged deliberate indifference.  Plaintiffs have not alleged facts to show that municipal policymakers knew that employees would confront similar situations or that the situation involved a difficult choice or a history of employees mishandling. *See, e.g.*, *Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 759 (W.D. Pa. 2018) (finding plaintiff failed to state a claim for deliberate indifference because although the complaint alleged bullying as to the plaintiff, it failed to allege notice of a "wider bullying problem").  As this is a "stringent" standard, the Court finds that Plaintiffs have not sufficiently stated this theory.  *See Ianuale v. New Jersey*, Civ. No. 18-3069, 2025 WL 21244568, at *17 (D.N.J. July 29, 2025) (dismissing *Monell* claim because the allegations were too conclusory to meet the "stringent standard of fault," plaintiffs failed to allege a "pattern of allegedly similar constitutional violations," and plaintiffs failed to allege facts permitting the court to infer an obvious need for training).  Moreover, the single-incident theory has a "narrow" reach, *Thomas*, 749 F.3d at 224, and it has not been alleged by Plaintiffs here.  *Id.* at 223-25 (collecting single-incident cases that show the narrow scope of these claims); *Gaymon v. Esposito*, Civ. No. 11-4170, 2013 WL 4446973, at *15 (D.N.J. Aug. 16, 2013) (dismissing *Monell* claim because the plaintiffs "fail[ed] to state facts supporting their deliberate indifference based either on a pattern of constitutional violations of which they had notice or on a 'single-incident' liability theory").  Because Plaintiffs have failed to state a claim for *Monell* liability, the Court grants Defendants' Motion to Dismiss this claim.

### 6.    *Qualified Immunity*

The Court next considers Defendants' argument that they are entitled to qualified immunity as to Plaintiffs' remaining false arrest claim.  "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Schneyder*, 653

F.3d at 331 (citation modified).  Moreover, "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Defendants are entitled to qualified immunity unless they "(1) violated a constitutional right that (2) was clearly established when [they] acted." *Stringer v. Cnty. of Bucks*, 141 F.4th 76, 85 (3d Cir. 2025).

"A right is clearly established if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Urda v. Sokso*, 146 F.4th 311, 314 (3d Cir. 2025) (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)).  This generally requires "controlling precedent" or a "robust consensus of cases of persuasive authority." *Id.* (citing *Ashcroft v. Al-Kidd*, 563 U.S. 731, 742 (2011)).  "The extant case law must be derived from established Supreme Court and Third Circuit precedent . . . or 'state law and rules' and their interpretation by the highest court in that state when determining the contours of a state-granted right." *Montemuro v. Jim Thorpe Area Sch. Dist.*, 99 F.4th 639, 645 (3d Cir. 2024); *see also Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211-12 (3d Cir. 2001) (finding defendant not entitled to qualified immunity after evaluating right under Pennsylvania state law).

Importantly, this question of law cannot be framed too abstractly.  *Urda*, 146 F.4th at 314-15.  A defendant is entitled to qualified immunity if cases show that "the Fourth Amendment bans what [the defendant] did *in these circumstances*." *Id.* at 314 (emphasis added).  And a finding of probable cause in relation to the Fourth Amendment "depends heavily on each case's facts." *Id.* It is no surprise, then, that "Rule 12(b)(6) is often 'a mismatch for immunity and almost always a bad ground for dismissal.'" *Stringer*, 141 F.4th at 85 (quoting *Fogle v. Sokol*, 957 F.3d 148, 162

n.14 (3d Cir. 2020)).  As discussed by the Third Circuit in *Stringer*, "complaints typically lack the case-specific details needed to conduct the clearly established analysis." *Id.* at 86.  The Third Circuit further noted that "because plaintiffs are not obligated to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds . . . even well-pleaded complaints may not include sufficient facts to allow a court to identify the right with the requisite specificity." *Id.* (citation modified).  Indeed, "the fact-bound nature of the clearly established inquiry combined with the dearth of facts at the pleading stage makes it difficult for a defendant to claim qualified immunity on the pleadings before discovery." *Id.* (citation modified).  Where this occurs, "the district court must deny the motion to dismiss and seek to resolve qualified immunity at summary judgment." *Id.*

Here, Defendants argue that "it was not clearly established under federal law that individuals had an absolute right to record public meetings without complying with reasonable time, place, and manner restrictions."  (ECF No. 6-1 at 26.)  In other words, as Defendants put it, "[n]othing in clearly established federal law put the officers and municipal officials on notice that arresting individuals under these circumstances would violate the First or Fourth Amendments." (*Id.* at 26-27.)  However, Plaintiffs point to the New Jersey Supreme Court's holding in *Tarus v. Borough of Pine Hill*, which held that New Jersey's common law right of public access to governmental proceedings encompassed a right to videotape public meetings subject to reasonable restrictions. 916 A.2d 1036, 1039 (N.J. 2007).  This clear promulgation by the state's highest court would seem to suggest that Plaintiffs may have had a "clearly established" right.  However, the parties appear to dispute important facts.  For example, Plaintiffs allege that they were arrested even though Defendants allegedly knew that Plaintiffs had permission to record the meeting and refused to review "written proof" of it, while Defendants dispute that Plaintiffs had permission to

record.  (ECF No. 1 at 7; ECF No. 6-1 at 10.)  Moreover, Plaintiffs argue that they did not interfere with or disrupt the meeting or other citizens' right of access to the meeting, while Defendants argue that they had probable cause to arrest Plaintiffs for disrupting the meeting.  (ECF No. 1 at 7; ECF No. 6-1 at 9.)

Given these factual disputes, "the Court cannot presently determine whether it would have been clear" to Sergeants LaCicero and Lamb "that their conduct was unlawful when interacting" with Plaintiffs.  *Stringer v. Cnty. of Bucks*, Civ. No. 22-1525, 2023 WL 2163871, at *5 n.7 (E.D. Pa. Feb. 22, 2023), *aff'd*, 141 F.4th 76 (3d Cir. 2025).  Accordingly, the Court will decline to dismiss Plaintiffs' remaining § 1983 claim on the basis of qualified immunity at this stage of the litigation.  *See Jones v. United States*, Civ. No. 18-13943, 2022 WL 1830777, at *8 (D.N.J. June 3, 2022) (same); *Miller v. Burgett*, Civ. No. 19-5309, 2021 WL 2351993, at *4 (E.D. Pa. June 9, 2021) (same even when parties produced video footage of the alleged assault).

### C.    State Law Claims

#### 1.    *New Jersey Civil Rights Act*

Plaintiffs claim all Defendants except the Borough of Lavallette violated the NJCRA.  (ECF No. 1 at 15.)  Plaintiffs' NJCRA claim and their § 1983 claims are "based on the same underlying facts and theories."  *Danielson v. Chester Twp.*, Civ. No. 13-5427, 2014 WL 3362435, at *9 (D.N.J. July 9, 2014).  And because the NJCRA "is interpreted analogously to § 1983," Plaintiffs' claim under the NJCRA will "rise and fall with [their] parallel § 1983 claims."  *Mervilus v. Union Cnty.*, 73 F.4th 185, 193 n.4 (3d Cir. 2023) (citing *Est. of Roman v. City of Newark*, 914 F.3d 789, 796 n.5 (3d Cir. 2019)); *see also Perez v. Zagami, LLC*, 94 A.3d 869, 875 (N.J. 2014) (describing the NJCRA as a "state law analogue to Section 1983").  Therefore, having concluded that Plaintiffs have sufficiently alleged a claim of false arrest under § 1983 as against the Officer

Defendants in their individual capacity, that claim will also proceed under the NJCRA.  Plaintiffs'

NJCRA claim is dismissed in all other respects.

### 2.    *Tort Claims of False Arrest and Malicious Prosecution*

Plaintiffs bring common law claims for false arrest and malicious prosecution against the

Borough of Lavallette, Chief LaCicero, and Sergeants LaCicero and Lamb.  (ECF No. 1 at 15-18.)

However, Plaintiffs fail to include any allegations regarding their compliance with the New Jersey

Tort Claims Act (TCA).[10]  The statute reads, "No action shall be brought against a public entity or

public employee under [the TCA] unless the claim upon which it is based shall have been presented

in accordance with the procedure set forth in this Chapter."  N.J. Stat. Ann. § 59:8-3.  Such notice

must be filed within 90 days of the accrual of the claim.  *Id.* § 59:8-8.  Because the Court cannot

confirm whether Plaintiffs complied with the TCA for purposes of bringing these common law

claims, the Court dismisses them.  *See Nabelsi v. Holmdel Twp.*, No. A-2321-22, 2025 WL 30131,

at *7 (N.J. Super. Ct. App. Div. Jan. 6, 2025) (dismissing false arrest claim for failure to comply

with the TCA's notice requirements); *Purvis v. City of Newark*, Civ. No. 16-1830, 2017 WL

1032991, at *3-4 (D.N.J. Mar. 16, 2017) (dismissing state malicious prosecution claim for failure

to file notice under the TCA); *Wilson v. N.J. State Police*, Civ. No. 4-1523, 2006 WL 2358349, at

---

[10]    The Court may raise this issue *sua sponte.  See Lepping v. County of Mercer*, Civ. No. 18-2118, 2018 WL 5263281, at *10 (D.N.J. Oct. 23, 2018) ("[T]he Complaint contains no allegations that Plaintiff filed the required notice before bringing suit.  Although Defendants do not raise this argument, the notice requirement under the Tort Claims Act is 'a jurisdictional precondition' to filing a tort claim against public employees that the Court can address *sua sponte*.") (quoting *Ptaszynski v. Uwaneme*, 852 A.2d 288, 294-95 (N.J. Super. Ct. App. Div. 2004)); *Michaels v. State of N.J.*, 955 F. Supp. 315, 331 (D.N.J. 1996) (dismissing tort claims against non-moving defendants *sua sponte* for failure to comply with TCA notice provisions); *cf. Myers v. Medford Lakes Bd. of Educ.*, 489 A.2d 1240, 1241-42 (N.J. Super. Ct. App. Div. 1985) (agreeing with trial court that the plaintiff's complaint "would have been subject to dismissal for failure to comply with the notice of claim requirements" of the TCA, despite the issue not being briefed on appeal).

*7-8 (D.N.J. Aug. 15, 2006) (dismissing false arrest claim and noting plaintiff "failed to allege that he filed the required notice [under the TCA] at all, much less within the allotted time period").

## IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Defendants' Motion to Dismiss (ECF No. 6) is **GRANTED IN PART** and **DENIED IN PART**.  An appropriate Order follows.

Dated: November 20, 2025

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**